```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


CONSIGLI CONSTRUCTION CO., INC,  )
                                 )
        Plaintiff                )
                                 )      CIVIL ACTION NO.
                                 )      16-40041-DPW
v.                               )
                                 )
TRAVELERS INDEMNITY CO. and      )
UNITED SPECIALTY INSURANCE CO.,  )
                                 )
        Defendants.              )
```

## MEMORANDUM AND ORDER
### June 21, 2017

Consigli Construction Co., Inc. and Travelers Indemnity Company have each filed dispositive motions to resolve whether Travelers has a duty to defend Consigli in a state tort action brought by a subcontractor's worker injured at one of Consigli's project sites.  Meanwhile, Consigli has moved to remand the case to state court.  As a matter of procedure, I find removal of the case has not been shown to have been inconsistent with this court's diversity jurisdiction and will deny Consigli's motion to remand.

As a matter of substance, I find that Consigli did not in a timely fashion properly make Travelers aware of facts that would be sufficient to bring Consigli within the scope of an insured under the Travelers insurance agreement at issue; consequently, Travelers has no duty to defend Consigli in the state court

action during the time period in dispute.  As a result, I will grant summary judgment to Travelers.

## I. BACKGROUND

***A.   Facts*** [1]

Consigli was the general contractor for a renovation project at Methuen High School.  Consigli engaged several subcontractors to work on the project, including American Environmental, Inc. and Costa Brothers Masonry of Fairhaven, Inc.  American Environmental was responsible for demolishing concrete floors within the existing structures on the project; Costa Brothers provided masonry work.  Wellington M. Ely, Jr. was an employee of Costa Brothers and worked as a mason on the project.

Costa Brothers had a commercial general liability insurance policy issued to it by Travelers.  In order to work on the Methuen High School project as a subcontractor for Consigli, Costa Brothers agreed to name Consigli as an additional insured on its Travelers policy.

On October 22, 2013, Ely was walking inside a building on the project where the concrete floor had been broken up when he

---

[1] The facts recited here are drawn from the complaint filed in the underlying state court action for which the costs of defense are sought.

tripped and fell over exposed wire.  He injured his knees, neck, and left shoulder.  He also experienced headaches in the aftermath of the fall.  American Environmental had demolished the concrete floor in the area where Ely fell, allegedly without removing protruding wires or warning workers of the potential tripping hazard.  Ely alleged American Environmental and Consigli were both responsible for his injuries because American Environmental performed its demolition work negligently and Consigli failed to maintain a safe working environment.  Ely made no specific allegations that Costa Brothers caused his injuries.

*B.   Procedural History*

Ely filed suit against American Environmental and Consigli on July 1, 2015.  Consigli mailed a written demand to Travelers on July 17, 2015, requesting that Travelers defend Consigli against Ely's action.  On July 22, 2015, Consigli, for its part, filed a third-party complaint against Costa Brothers and American Environmental in which it alleged that Ely's injuries were the result of the work by Costa Brothers and American Environmental on the project.  Travelers informed Consigli on August 12, 2015 that it would not defend it in the state action because Costa Brothers "was not the cause of this loss."

Consigli filed the instant coverage action against Travelers and Century Surety Company, American Environmental's

3

insurer, in state court on March 18, 2016, seeking a declaration that the defendants were obligated to defend Consigli and seeking damages for breach of contract. The defendants removed the case to this court. I have since granted Consigli's motion to amend the complaint to substitute United Specialty Insurance Company for Century Surety as a defendant because United Specialty had replaced Century Surety as American Environmental's insurer. On February 3, 2017, Consigli and United Specialty reported they had reached an agreement in principle to settle the action against United Specialty and on April 24, 2017, they filed a stipulation of dismissal of Consigli's claims against United Specialty. The dispute between Consigli and Travelers remains and is now framed by the remand and summary judgment motion practice the parties have pressed.

## II. MOTION TO REMAND

Before considering the cross-motions for summary judgment, I must at the threshold address Consigli's motion to remand this case to state court for resolution. Consigli contends that the amount in controversy is below the jurisdictional requirement for diversity claims in federal court. 28 U.S.C. § 1332. Consigli states that as of January 13, 2017, it had incurred only $60,000.45 in attorney's fees and defense costs, below the necessary $75,000 threshold.

4

After filing its motion to remand, Consigli agreed to settle its claims against United Specialty. In light of the settlement with United Specialty, Consigli now asserts Travelers owes only the defense costs of $17,143.80 Consigli incurred from July 20, 2015 to December 7, 2015, together with the costs Consigli incurred in pursuing the instant coverage case against Travelers. As of November 29, 2016, these amounted to $10,000.

Because Travelers has invoked federal jurisdiction by removing the case from state court on diversity grounds, it "bears the burden of demonstrating that the court has subject-matter jurisdiction over the case" and "must show that the amount in controversy exceeds $75,000." *Milford-Bennington R. Co., Inc.* v. *Pan Am Rys., Inc.*, 695 F.3d 175, 178 (1st Cir. 2012).[2] "The amount in controversy in actions seeking

---

[2] The First Circuit has yet to calibrate expressly the precise burden a removing party bears in establishing that the case meets the amount in controversy requirement in the setting of a motion to remand. *See Milford-Bennington*, 695 F.3d at 179. That court has, however, held that a defendant seeking removal under the Class Action Fairness Act of 2005 "must show a 'reasonable probability' that the jurisdictional threshold is satisfied." *Id.* (citing *Amoche* v. *Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 48-49 (1st Cir. 2009)). Judges in this district have applied the "reasonable probability" standard to cases otherwise removed on diversity grounds. *See Huston* v. *FLS Language Centres*, 18 F. Supp. 3d 17, 21 (D. Mass. 2014) (Saylor, J.); *see also Laughlin Kennel Co.* v. *Gatehouse Media Inc.*, 202 F. Supp. 3d 178, 179 (D. Mass. 2016) (Hillman, J.) ("In a case based in diversity jurisdiction, the defendant must show a 'reasonable probability' that the amount in controversy is greater than $75,000.") (citing *Huston*, 18 F. Supp. 3d at 21). As I will discuss, I find Travelers has shown a reasonable

5

declaratory relief 'is the value of the right or the viability of the legal claim to be declared, such as a right to indemnification or a duty to defend.'" *CE Design Ltd.* v. *Am. Econ. Ins. Co.*, 755 F.3d 39, 43 (1st Cir. 2014) (quoting 14AA Wright & Miller, Federal Practice and Procedure Jurisdiction § 3708 (4th ed.)).

In calculating the amount in controversy, Consigli references immaterial events that have occurred after removal. It is well-settled that "[f]or the purposes of establishing diversity jurisdiction, the amount in controversy is determined by looking to the circumstances at the time the complaint is filed." *Coventry Sewage Assoc.* v. *Dworkin Realty Co.*, 71 F.3d 1, 4 (1st Cir. 1995). For cases removed from state court, "satisfaction of the amount-in-controversy requirement generally is determined on the basis of the record existing at the time

---

probability that the amount in controversy at the time of removal was greater than $75,000. Thus, I need not address the question whether a removing party in these circumstances may face a less demanding burden, one more in line with the traditional burden a plaintiff faces when invoking diversity jurisdiction outside the removal context. *See St. Paul Mercury Indem. Co.* v. *Red Cab Co.*, 303 U.S. 283, 288-89 (1938) ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that . . . [i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount."); *see also LaValley* v. *Quebecor World Book Servs. LLC*, 315 F. Supp. 2d 136, 141 (D. Mass. 2004) ("The Notice of Removal alleges that the amount in controversy exceeds $75,000 and it does not 'appear to a legal certainty that the claim is really for less than [$75,000].'") (citations omitted).

6

the notice of removal . . . is filed with the district court."
14C Wright & Miller, Federal Practice and Procedure Jurisdiction
§ 3725.1 (4th ed.). "Thus, events occurring subsequent to
removal which reduce the amount recoverable . . . do not oust
the district court's jurisdiction once it has attached." *St.
Paul Mercury Indem. Co.*, 303 U.S. at 293.

At the time the case was removed from state court, the
jurisdictional threshold was met. The notice of removal claimed
the amount in controversy exceeded $75,000 because Consigli
sought a declaration of a duty to defend that would cover the
attorney's fees and defense costs incurred in defending the
state court action, prosecuting a third-party complaint and
cross-claim in the state court action, and prosecuting the
instant case. Such costs can be included in determining the
amount in controversy here. *Velez* v. *Crown Life Ins. Co.*, 599
F.2d 471, 474 (1st Cir. 1979) (attorney's fees may be included
in calculating amount in controversy if "the fees are provided
for by contract"); *see also Auto-Owners Ins. Co. v. Stevens &
Ricci Inc.*, 835 F.3d 388, 396 (3d Cir. 2016) (where an insurance
policy imposes a duty to defend its insured, attorney's fees and
defense costs are "properly included in determining the amount
in controversy").

As Travelers notes in its opposition to remand, there was
in any event a reasonable probability at the time of removal

7

that these attorney's fees and defense costs would exceed $75,000. Even if the attorney's fees and defense costs have not yet reached the jurisdictional threshold, it bears emphasizing that Consigli also sought indemnification for the potential damages that could be awarded to Ely in the state court action, which Ely represented could total at least $147,034.33. Consigli's post-removal settlement agreement with United Specialty does not divest me of the power to resolve this case on the merits. I will deny the motion to remand.

### III. SUMMARY JUDGMENT AS TO DUTY TO DEFEND

Turning the merits, I must observe that I am obligated to grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed R. Civ. P. 56. When I am faced with cross-motions for summary judgment, I must "consider each motion separately, drawing inferences against each movant in turn." *Reich* v. *John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir. 1997). "Under Massachusetts law the interpretation of an insurance policy and the determination of the policy-dictated rights and obligations are questions of law, appropriate grist for the summary judgment mill." *Merchants Ins. Co. of N.H., Inc.* v. *U.S. Fidelity and Guar. Co.*, 143 F.3d 5, 8 (1st Cir. 1998) (citing *Assetta* v. *Safety Ins. Co.*, 682 N.E.2d 931, 932 (Mass. App. Ct. 1997)).

1. Mootness

Travelers has moved for summary judgment on the grounds that Consigli's settlement with United Specialty renders moot Consigli's claims against Travelers. Travelers contends Consigli's declaratory judgment claim is moot because United Specialty has agreed to defend Consigli going forward in the state court action. Travelers also argues Consigli's breach of contract claim is no longer live because United Specialty has agreed to reimburse Consigli for its defense costs and attorney's fees and therefore has suffered no damage from Travelers' alleged breach of its duty to defend it. I must address this issue at the threshold before undertaking resolution directly on the merits.

Consigli does not appear to contest that its settlement agreement with United Specialty moots its claim for a declaration that Travelers is obligated to defend it in state court going forward. However, because the settlement does not cover all of the costs it has incurred in both the state court action and the instant case, Consigli maintains that its breach of contract claim against Travelers remains live.

Based on Consigli's description of the terms of the settlement agreement, Consigli's claim for a declaratory judgment as to Travelers' duty to defend is moot in part. "For declaratory relief to withstand a mootness challenge, the facts

alleged must 'show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Am. Civil Liberties Union of Mass.* v. *U.S. Conference of Catholic Bishops*, 705 F.3d 44, 53-54 (1st Cir. 2013) (quoting *Preiser* v. *Newkirk*, 422 U.S. 395, 402 (1975)). In light of Consigli's settlement with United Specialty, there is no longer a sufficiently immediate controversy as to Travelers' duty to defend Consigli going forward. Because United Specialty has taken on the duty to defend Consigli in the state court action, a declaration that Travelers is required to defend Consigli going forward would not affect the substantive rights of the parties.

Consigli may, however, seek a declaration that Travelers was required to defend it from July 20, 2015 to December 7, 2015 and that Travelers is required to reimburse Consigli for the costs incurred in prosecuting this current case. It appears United Specialty will not reimburse Consigli for either the defense costs Consigli incurred from July 20, 2015 to December 7, 2015 or for the costs it incurred in pursuing this case against Travelers. A declaration that Travelers had a duty to defend during that time in the underlying action and will be obligated for attorney fees in this action will therefore affect the substantive rights of the parties. *Old Republic Ins. Co.* v. *Chuhak & Tecson, P.C.*, 84 F.3d 998, 1001 (7th Cir. 1996) ("Old

10

Republic's suit, while moot insofar as any further duty to defend against Kearns's 1991 suit is concerned, is not moot concerning responsibility for the costs of defense already incurred."). For the same reasons, the United Specialty/Consigli settlement agreement does not make moot Consigli's breach of contract claim for the costs incurred in the underlying action from July 20, 2015 to December 7, 2015 and for the costs incurred in prosecuting this action.

Because there remains a live dispute as to Travelers' duty to defend Consigli at least for some period of time in the underlying action and for costs in this related action, I turn to address the duty to defend directly on the merits.

### 2. Duty to Defend

I thus come now to the central question in this litigation: whether Travelers had a duty to defend Consigli in the underlying state action. "'In order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage.'" *Billings* v. *Commerce Ins. Co.*, 936 N.E.2d 408, 414 (Mass. 2010) (quoting *Sterilite Corp.* v. *Continental Cas. Co.*, 458 N.E.2d 338, 341 (Mass. App. Ct. 1983)). "However, when the allegations in the underlying complaint lie expressly outside the policy coverage and its

purpose, the insurer is relieved of the duty to investigate or defend the claimant." *Id.* (internal quotations omitted).

Costa Bothers agreed to name Consigli as an additional insured on its commercial general liability policy with Travelers, but only as to some injuries. The dispute before me turns on whether Consigli qualifies as an additional insured for the injuries alleged in the underlying state court action. Costa Brothers' policy with Travelers defines an additional insured under the policy as follows:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> 1. WHO IS AN INSURED – (Section II) is amended to include any person or organization that you agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part, but:
>
>    a) Only with respect to liability for "bodily injury", "property damage" or "personal injury"; and
>
>    b) If, and only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the "written contract requiring insurance" applies. The person or organization does not qualify as an additional insured with respect to independent acts or omissions of such person or organization.

Consigli qualifies as an additional insured "[o]nly with respect to liability for 'bodily injury', 'property damage' or 'personal injury'" and "[i]f and only to the extent that, the injury or damage is caused by acts or omissions of [Costa Brothers] . . . ." It is clear that section a) of the

endorsement is satisfied: Ely's injury qualifies as a "bodily injury" as alleged in his complaint in state court.  I must consequently determine whether a reasonable jury could find that "the injury or damage [was] caused by" acts or omissions of Costa Brothers.

Consigli argues Ely's injury was "caused by" Costa Brothers because he was injured in the course and scope of his employment with Costa Brothers at the project site.  In doing so, Consigli relies on *National Union Fire Insurance Co. of Pittsburgh* v. *Lumbermens Mutual Casualty Co.*, in which the First Circuit interpreted an agreement between a subcontractor and general contractor and found the general contractor qualified as an additional insured under the subcontractor's policy.  385 F.3d 47, 55 (1st Cir. 2004).

The policy in *National Union*, while similar to the policy at issue here, used a critically different operative phrase to define the scope of coverage.  The policy in *National Union* defined an additional insured as "[a]ny person or organization to whom or to which you are obligated by virtue of a written contract, agreement or permit to provide such insurance as afforded by this policy . . . but only with respect to liability *arising out of*: a. 'Your work' for that insured by you."  *Id.* at 50 (emphasis added).  The court noted that "'under Massachusetts law the phrase 'arising out of' denotes a level of causation

13

that lies between proximate and actual causation.'" *Id.* (quoting *Merchants Ins. Co.*, 143 F.3d at 9). Using this "intermediate causation standard," *National Union* held that liability "aris[es] out of" a subcontractor's work if "the employee [is] injured within the general work area where the subcontractor's work [is] being performed, so long as his presence [is] work-related." *Id.* at 52.

Here, the operative phrase setting the scope of coverage is not "arising out of"; it is "caused by." Under Massachusetts law, the phrase "caused by" has a narrower meaning than the phrase "arising out of." *New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co.*, 667 N.E.2d 295, 298 (Mass. App. Ct. 1996) ("The usual meaning ascribed to the phrase 'arising out of' is much broader than 'caused by.'"); *see also Bagley v. Monticello Ins. Co.*, 720 N.E.2d 813, 816 (Mass. 1999) ("The phrase 'arising out of' must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law.").

I recognize that the precise meaning of "caused by," when used in an insurance policy in Massachusetts, does not appear to be entirely settled. At least one Massachusetts state trial court judge has equated the phrase with proximate cause. *Leahy v. Lighthouse Masonry, Inc.*, No. MICV201100151, 2014 WL 7405931, at *8 (Mass. Sup. Ct. June 2, 2014) ("In construing an insurance

policy, the phrase 'caused by' . . . embodies the concept of proximate causation."). But the Supreme Judicial Court has construed "caused by" — when used in M.G.L c. 149, § 29C, which makes void any indemnity provision in a construction contract "which requires a subcontractor to indemnify any party for injury to persons . . . not caused by the subcontractor" — to require only an act or omission that "'brought about or provoked the mishap.'" *Spellman* v. *Shawmut Woodworking & Supply, Inc.*, 840 N.E.2d 47, 52 (Mass. 2006) (quoting *Johnson* v. *Modern Continental Constr. Co.*, 731 N.E.2d 96, 98-99 (Mass. App. Ct. 2000)).[3]

In any event, under any reasonable definition of "caused by" there is no possibility, based on the allegations in the complaint, that Costa Brothers caused the injury to Ely. American Environmental caused the wire to be exposed by demolishing the floors negligently. Costa Brothers is not alleged to have undertaken work in the area where the accident occurred. Having retained in the agreement the right to "post and maintain adequate danger signs and other warnings against hazards" at the work site, Consigli was required to "exercise

---

[3] In *Johnson* v. *Modern Continental Construction Co.*, 731 N.E.2d 96 (Mass. App Ct. 2000) the Appeals Court observed that proximate cause and the "brought about or provoked" standard of causation are different, with the latter standard a slightly lower burden. *Id*. at 99-100.

15

that control with reasonable care for the safety of others" and would "[be] liable for damages caused by [its] failure to do so." *Corsetti* v. *Stone Co.*, 483 N.E.2d 793, 798 (Mass. 1985). There is no act or omission by Costa Brothers identified in the complaint that would make Costa Brothers the proximate cause of Ely's injury or would show that Costa Brothers brought about or provoked Ely's injury.

Consigli's alternative attempts to show causation by Costa Brothers apart from the express language of the complaint also fail. First, Consigli erroneously contends a reasonable jury could find Ely's own negligence caused his injury and this negligence could be imputed to Costa Brothers through vicarious liability. Under Massachusetts law, however, "reliance on an imputation theory" to prove causation under these circumstances "is inappropriate since vicarious liability of an employer for an employee's negligence is generally recognized to provide an injured *victim* of that negligence [and not some third party seeking separate indemnification] with an increased likelihood of compensation." *Collins* v. *Kiewit Const. Co.*, 667 N.E.2d 904, 906 n.4 (Mass. App. Ct. 1996) (emphasis in original) (citing *Elias* v. *Unisys Corp.*, 573 N.E.2d 946, 947-49 (Mass. 1991)).

Second, Consigli separately seeks to impute to Costa Brothers the alleged negligence of Ely's foreman William Russell based on additional facts not recited in the complaint. Russell

16

was deposed as a part of the underlying state court case on April 14, 2016. He testified he was walking with Ely at the time of the accident and saw him trip on the wire. He also stated there was a strip of finished concrete about ten feet wide stretching across the room, but that he and Ely walked across the broken up concrete floor because it was the more direct route.

The underlying complaint itself does not allege that Russell was negligent or that Costa Brothers should be vicariously responsible for Russell's negligence. In fact, the complaint states no claims against Costa Brothers and makes no reference to Russell. "Massachusetts courts generally use extrinsic facts (such as those set forth in demand letters to the insured) to aid interpretation of the complaint, and not as independent factual predicates for a duty to defend." *Open Software Found., Inc.* v. *U.S. Fidelity & Guar. Co.*, 307 F.3d 11, 15 (1st Cir. 2002).

The adverb "generally" may be read to leave open the possibility that extrinsic facts in some limited but uncertain circumstances might be used as predicates for triggering a duty to defend. In *Boston Symphony Orchestra, Inc.* v. *Commercial Union Insurance Co.*, the Supreme Judicial Court limned the limited role extrinsic facts should play in determining whether a duty to defend exists:

> [O]ur opinion in this case should not be taken to mean that an insured can, in the absence of a complaint that requires coverage, force its insurer to defend the insured by simply telling the insurer facts which would create coverage. We hold only that an insurer must give consideration to facts outside the complaint when it considers the allegations in the complaint to determine if coverage exists. 545 N.E.2d 1156, 1160 (Mass. 1989).

I may not consider additional facts, outside of what is alleged in the underlying complaint, that were developed, adduced, and presented after the closed period for which a duty to defend is claimed in determining whether a duty existed during that period.

I am tasked with determining the duty to defend solely for the period from July 20, 2015 to December 7, 2015. A duty to defend does not arise until the insurer receives notice of the suit against the insured. *Rass Corp.* v. *Travelers Cos., Inc.*, 63 N.E.3d 40, 46-47 (Mass. App. Ct. 2016). The parties agree that Russell's account of the accident had not been presented to Travelers before his deposition on April 14, 2016.[4] Therefore, even if the facts developed at Russell's deposition triggered a duty to defend, Travelers' duty to defend would have begun on April 14, 2016; Travelers would have had no duty to defend Consigli before that date. *Rass Corp.*, 63 N.E.3d. at 47.

The pleadings filed in the underlying action establish the metes and bounds of the territory Travelers must survey in

---

[4] There was, for example, no demand letter asserting these facts.

determining the duty to defend in this circumstance. The facts alleged in the underlying complaint do not support coverage here. That complaint has not been amended. I will not rely on belatedly developed extrinsic facts to find a duty to defend in these circumstances.[5]

### IV. CONCLUSION

For the reasons more fully set forth above, I DENY plaintiff's motion [Dkt. No. 44] to remand the case to state court. I conclude Travelers has no duty to defend Consigli and therefore GRANT defendant's motion [Dkt. No. 51] for summary judgment and correlatively DENY plaintiff's motion [Dkt. No. 56] for summary judgment.

/s/ *Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

[5] Although beyond the grounds of my decision regarding the basis for determining whether there is any duty to defend on the record before me, my review of the extrinsic facts developed prompts me to note my view that even if the extrinsic facts now referenced were considered, I would still not find a duty to defend. Russell's request, as Ely's supervisor with Costa Brothers, that Ely walk with him to other parts of the construction site, could not be said to have brought about or proximately caused the accident. To be sure, construction sites are accident-prone places. However, walking from one specific site to another on the general site is no more dangerous or causative than any other common activity on an active construction site. There are no facts developed here to show Russell's direction took them through some open and obviously dangerous territory and thereby caused the injury; indeed, it was Consigli that was required to maintain a safe site.